S & A Marinas 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 




NO. 3-93-419-CV




S & A MARINAS, INC.,



 APPELLANT


vs.





LEONARD MARINE CORPORATION,



 APPELLEE



 



FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT



NO. 93-02844A, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING


 




 S & A Marinas, Inc. d/b/a Hurst Harbor Marina appeals from a summary judgment
rendered in favor of Leonard Marine Corporation d/b/a Lake Travis Yacht Harbor on S & A
Marinas' claim of tortious interference with its alleged contract with the Lower Colorado River
Authority (LCRA). We will affirm the summary judgment.


BACKGROUND


 S & A Marinas and Leonard Marine operate neighboring marinas on Lake Travis. 
Both marinas hoped to expand their facilities by leasing additional land from the LCRA. The
marinas' proposed areas of expansion overlapped, so the LCRA could grant only one of the
requested leases.

 The board of the LCRA passed a resolution authorizing its staff to negotiate and
execute a fifteen-year lease with S & A Marinas. The facts most favorable to S & A Marinas
indicate that in the months following the resolution, it repeatedly attempted to obtain a final lease
and was assured that one was forthcoming, and that the LCRA still planned to lease the tract to
S & A Marinas. In the meantime, LCRA staff members negotiated and executed a lease with
Leonard Marine, which the LCRA board eventually ratified.

 S & A Marinas sued the LCRA and two of its employees individually alleging
various causes of action. As part of the same case, S & A Marinas sued Leonard Marine for
tortious interference with contractual relations between S & A Marinas and the LCRA. The trial
court severed the cause of action against Leonard Marine and rendered summary judgment in its
favor. S & A Marinas appeals. (1)


DISCUSSION


 S & A Marinas raises ten points of error. We will address the first two, which
argue respectively that there is a genuine issue of material fact regarding the existence of a
contract between S & A Marinas and the LCRA, and that the summary judgment evidence did not
establish the absence of a contract as a matter of law. The remaining eight points of error are
contingent upon our sustaining the first two. Because of our disposition of the first two points of
error, we do not address the other eight.

 The dispositive issue in this appeal is whether the resolution authorizing the LCRA
staff to negotiate and execute a lease with S & A Marinas constituted a contract between the two
entities. (2) It is axiomatic that a cause of action for tortious interference with a contract will not lie
in the absence of a contract. (3) Guynn v. Corpus Christi Bank & Trust, 589 S.W.2d 764, 770 (Tex.
Civ. App.--Corpus Christi 1979, writ dism'd). If a trial court can determine conclusively that no
contract exists, summary judgment is appropriate. Gillum, 778 S.W.2d at 565. S & A Marinas
concedes that, if the LCRA had the power, after passing the resolution, to decline to lease it the
tract for any reason, the resolution does not constitute a contract. We hold that the wording of
the resolution itself conclusively establishes that it is not a contract as a matter of law. To hold
otherwise would contravene public policy allowing governmental agencies to reconsider action
taken with respect to a contract not yet finalized.

 By its very terms, the LCRA board's resolution is not a final contract insofar as
it contemplates further staff action before contractual relations are finalized. (4) Specifically, it
contemplates further negotiation between the LCRA staff and S & A Marinas, as well as the
execution of a final contract which would be redundant if, as S & A Marinas contends, the
resolution itself is a binding contract. S & A Marinas hopes to bring to trial extrinsic evidence
of its course of dealing with the LCRA, of the fact that all material terms had been negotiated,
and of the existence of a standard LCRA lease form in support of its contention that "authorized
to negotiate and execute" really means "instructed to draw up the standard forms for." However,
if the terms of a document purporting to be a contract are clear, the document may be construed
as a matter of law without reference to such evidence. See R & P Enters. v. LaGuarta, Gavrel
& Kirk, Inc., 596 S.W.2d 517, 518-19 (Tex. 1980) (examining the terms of a promissory note
and excluding extrinsic evidence as to its meaning). (5) Furthermore, whether offer and acceptance
have occurred is usually a question of law. (6) See Gilbert v. Pettiette, 838 S.W.2d 890, 893 (Tex.
App.--Houston [1st Dist.] 1992, no writ). 

 S & A Marinas correctly states that we must determine whether the LCRA intended
to be bound by its resolution. Sun Oil Co. (Delaware) v. Madeley, 626 S.W.2d 726, 727-28
(Tex. 1981). Although S & A Marinas contends that there is a fact issue with respect to the
LCRA's intent, in the ordinary case the writing alone will be deemed to express the presence or
absence of intent to be bound. Id. at 728; R & P Enters., 596 S.W.2d at 518-19. Only if the
instrument is capable of multiple meanings and therefore ambiguous is there a fact issue rendering
summary judgment inappropriate. R & P Enters., 596 S.W.2d at 519. (7) Mere disagreement over
the interpretation of a document is not enough to render the document ambiguous. Sun Oil Co.
(Delaware), 626 S.W.2d at 727. 

 In this case, the resolution is an unambiguous grant of authority. The staff is
authorized to negotiate and execute a contract, but is not ordered to do so. The verb "directed"
appears in the second, rather than the first, paragraph and cannot be read to refer to "negotiate
and execute." Rather, the mandatory language refers to the carrying out of the resloution's terms
and purposes which are to authorize the staff to negotiate and execute a contract. By its very
terms, the resolution delegates the board's discretion in this matter to the staff rather than
mandating a course of action. It does not express the LCRA's intent to be bound and is not open
to the interpretation that it creates a binding contract.

 Our decision is consistent with public policy objectives of preserving the
government's ability to reevaluate its decisions before they become final. The LCRA enjoys
considerable discretion in the disposition of its own property:


It has no power to levy taxes, enact laws nor ordinances, as a city has; and its
efficient functioning depends in large measure on the sound judgment and good
business management of its Board of Directors. They have large control over the
operation of its properties, and the income to be derived therefrom, which
constitute the only source of revenue to meet its obligations. Of necessity matters
relating thereto must be left in large measure to their judgment, experience and
discretion . . . .



Lower Colorado River Auth. v. Chemical Bank & Trust Co., 185 S.W.2d 461, 467 (Tex. Civ.
App.--Austin), aff'd, 190 S.W.2d 48 (Tex. 1945). S & A Marinas urges us to hold that a
resolution of the LCRA board can, under the proper circumstances, constitute a contract between
the LCRA and another party. We decide this issue against a backdrop of strong policy
considerations in favor of preserving the LCRA's discretion in this area. The LCRA is bound,
of course, by the contracts that it makes, but we are reluctant to expand the definition of a contract
in a way that limits the LCRA's ability to reconsider decisions provisionally or tentatively made.

 The LCRA has the discretion to reconsider an action it has taken with regard to any
matter that has not become final. See Turner v. Joshua Indep. Sch. Dist., 583 S.W.2d 939, 942
(Tex. App.--Waco 1979, no writ); see also South Taylor County Indep. Sch. Dist. v. Winters
Indep. Sch. Dist., 249 S.W.2d 1010, 1012 (Tex. 1952). (8)

 A board resolution does not, in and of itself, create vested contractual rights. See
Turner, 583 S.W.2d at 942. Nor do those rights arise from the verbal communication of a
board's decision to the party affected. Id. Therefore, assurances by various employees of the
LCRA to the effect that the lease agreement between S & A Marinas and the LCRA was virtually
completed have no bearing on the issue of whether the resolution gave rise to a contract. Given
the LCRA's authority to reconsider its actions on a non-final matter, we conclude that rescission
of its initial action was within its discretion in this instance insofar as the resolution cannot be
construed as a final action. (9) We overrule S & A Marinas' first two points of error and
consequently do not address the remaining eight. 


 CONCLUSION


 As a matter of law, the LCRA had a right to decide not to carry out any proposed
action with respect to a lease of land to S & A Marinas up until the time such a lease was signed. 
The LCRA board retained its discretion in the matter by passing a resolution delegating its
authority but not rendering a final decision on the merits of S & A Marinas' application. 
Therefore, as a matter of law, there was no contract with which Leonard Marine could tortiously
interfere. Summary judgment in this instance was appropriate and we affirm the judgment of the
trial court.



 Bea Ann Smith, Justice

Before Chief Justice Carroll, Justices Kidd and B. A. Smith

Affirmed

Filed: May 4, 1994

Publish 
1. [1] In a cross-point, Leonard Marine contends that this cause should be dismissed because S &
A Marinas did not timely perfect its appeal. We disagree for the reasons set out in our November
24, 1993 order overruling Leonard Marine's motion to dismiss the appeal. We overrule Leonard
Marine's cross-point.
2. [2] S & A Marinas does not assert a cause of action for tortious interference with prospective
contractual relations, which is a valid cause of action that places upon the plaintiff a qualitatively
different burden of proof. See Gillum v. Republic Health Corp., 778 S.W.2d 558, 565 (Tex.
App.--Dallas 1989, no writ). S & A Marinas' appeal depends, therefore, on a claim that the
resolution constituted an existing contract.
3. [3] Our disposition of this case does not depend on a determination of whether the "contract"
is enforceable. A contract may be the subject of an interference action even though it is
unenforceable between the contracting parties. Exxon Corp. v. Allsup, 808 S.W.2d 648, 654-55
(Tex. App.--Corpus Christi 1991, writ denied). Instead we must decide whether the resolution
constituted a contract at all.
4. [4] The resolution reads in pertinent part:


 FURTHER RESOLVED that the General manager, or his designee,
be and hereby is, authorized to negotiate and execute a fifteen (15) year lease of
9.735 acres, LCRA Tract TS-6, Travis County, to S & A Marinas, Inc. (dba Hurst
Harbor Marina) for the continued use and expansion of a commercial marina as
recommended in Agenda Item 17 [Exhibit M]; and


 FURTHER RESOLVED that the General Manager, officers, and
staff be, and they hereby are, authorized and directed to do all things necessary and
proper to carry out the terms and purposes of these resolutions.


The agenda item to which the resolution refers states that the annual rent would be reevaluated
at five year intervals and that the initial annual rent would be $7,920.
5. [5] In R & P Enterprises, neither party contended that the note at issue was not a contract, and
the case involved merely the construction of the terms of that contract. The rules of construction
articulated in that case, however, apply to all written instruments, including the board resolution
in this case, and govern the question of whether a contract existed between LCRA and S & A
Marinas. See, e.g., University Sav. Ass'n v. Burnap, 786 S.W.2d 423, 425-26 (Tex.
App.--Houston [14th Dist.] 1990, no writ) (employing R & P Enterprises in its examination of
whether a savings association's bylaws vested rights of a contractual nature in a director); Enstar
Corp. v. Bass, 737 S.W.2d 890, 893 (Tex. App.--El Paso 1987, no writ) (citing R & P Enterprises
in its examination of whether a company policy, as embodied in its written Reserve Incentive
Program, created contract rights for its employees).
6. [6] S & A Marinas contends that the resolution constitutes the LCRA's "acceptance" of S & A
Marinas' "offer" as communicated by S & A Marinas through the LCRA staff to the LCRA
board.
7. [7] S & A Marinas cites Foreca, S.A. v. GRD Dev. Co., 758 S.W.2d 744 (Tex. 1988), for the
proposition that intent to form a binding contract is a fact issue. However, that case involved the
construction of a patently ambiguous phrase ("subject to legal documentation contract to be drafted
by [a party's attorney]"), which could be read either as a condition precedent to a contract or as
a directive to memorialize an already enforceable contract. Id. at 744-45. In other words, Foreca
states the law applicable to a situation in which the R & P Enterprises rules of construction do not
resolve ambiguities inherent in the wording of a document. In Foreca, the phrase appeared in a
document initialed by both parties to the "contract" and did not involve, as does this case, a
resolution defining the respective powers of an agency's board and staff. If the resolution can be
said to constitute an agreement between "parties," those parties would be the board and the
general manager of the LCRA--not the LCRA as a whole and S & A Marinas.
8. [8] Most of the caselaw dealing with the issue of reconsideration of actions taken by
governmental entities involves decisions made by school districts or administrative agencies. The
LCRA is a conservation and reclamation district created by the state under the authority of Tex.
Const. art. XVI, § 59a. However, the LCRA is an agency in the broader sense of the term, and
there is nothing to suggest that it has any less discretion than an agency created by other means. 
See Chemical Bank & Trust, 185 S.W.2d at 466-67; see also Lower Colorado River Auth. v.
McGraw, 83 S.W.2d 629, 636 (Tex. 1935) (holding that the LCRA board is a state board
contemplated by Tex. Const. art. XVI, § 30).
9. [9] We do not decide the issue of whether a board resolution could ever vest a party with
contractual rights. Rather, we determine that the resolution at issue in this case did not do so.